UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ACAP, L.L.C., f/k/a AGUIRRE, COLLINS & AIKMAN PLASTICS, LLC, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br>   v.<br><br>YAZAKI CORPORATION and YAZAKI NORTH AMERICA, INC.,<br>                   Defendants. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

Plaintiff ACAP, L.L.C., f/k/a Aguirre, Collins & Aikman Plastics, LLC individually and on behalf of a proposed class of direct purchasers of Instrument Panel Clusters (as defined below) from December 2002 through February 2010, brings this class action against Defendants under the federal antitrust laws for treble damages and injunctive relief and alleges as follows.

## NATURE OF THE CASE

1.      From December 2002 through December 2010, the Yazaki Defendants and their co-conspirators—United States and global manufacturers and suppliers of Instrument Panel Clusters (as defined below)—operated a price fixing cartel by entering a continuing combination and conspiracy with their co-conspirators to rig bids and fix, raise, maintain, or stabilize prices for Instrument Panel Clusters sold in the United States.  Because of Defendants' unlawful conduct, Plaintiff and the Class members paid artificially inflated prices for Instrument Panel Clusters and as a result have suffered antitrust injury to their business or property in violation of the federal antitrust laws.

2.      In the related U.S. Department of Justice Antitrust Division criminal investigation of price fixing in the motor vehicle parts industry, Yazaki Corporation has been criminally charged and agreed to plead guilty to antitrust violations with respect to its sales of Instrument Panel Clusters.

3.      Plaintiff brings this action under Section 1 of the Sherman Act of 1890, 15 U.S.C. § 1 ("Sherman Act") and Section 4 of the Clayton Act of 1914, 15 U.S.C. § 15 ("Clayton Act"), and asserts the following allegations on information and belief, except as to those paragraphs that pertain to Plaintiff, which are based upon personal knowledge.  Plaintiff's information and belief are based upon, *inter alia*, the investigation made by its attorneys.

## DEFINITIONS

4.      "Instrument Panel Clusters" are the mounted array of instruments and gauges housed in front of the driver of a motor vehicle.  They are also known as meters.

5.      The "Class Period" is December 2002 through and including December 2010.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to 15 U.S.C. §§ 15 and 26, and 28 U.S.C. §§ 1331, 1332(d) and 1337.

7.     Venue is proper in this district pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. §§ 1391 (b), (c) and (d) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, and one or more of the Defendants reside in, are licensed to do business in, are doing business in, had agents in, or are found or transact business in this District.

8.     The activities of Defendants and their co-conspirators were within the flow of, were intended to, and did have a substantial effect on, the interstate commerce of the United States.

9.     This Court has *in personam* jurisdiction over each of the Defendants because, *inter alia,* each Defendant: (a) transacted business throughout the United States, (b) manufactured, sold, shipped, and delivered substantial quantities of Instrument Panel Clusters throughout the United States, (c) had substantial contacts with the United States, and (d) was engaged in an illegal scheme and price-fixing conspiracy that was directed at and had the intended effect of causing injury to persons and entities residing in, located in, or doing business throughout the United States.

## THE PARTIES

10.     Plaintiff ACAP, L.L.C., f/k/a Aguirre, Collins & Aikman Plastics, LLC ("Plaintiff" or "ACAP") is a Michigan limited liability company with its principal place of

business in the State of Michigan.  Plaintiff purchased Instrument Panel Clusters directly from Yazaki during the Class Period.

11.     Defendant Yazaki Corporation is a corporation organized and existing under the laws of Japan, with its principal place of business in Tokyo, Japan.

12.     Defendant Yazaki North America Inc. ("Yazaki North America") is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Canton Township, Michigan.  It is a subsidiary of, and owned and controlled by, its parent, Yazaki Corporation.

13.     Yazaki Corporation and Yazaki North America are herein referred to and shall be referred to together herein as the "Yazaki Defendants."

14.     The Yazaki Defendants manufactured, marketed, and/or sold Instrument Panel Clusters that were sold in the United States during the Class Period.

## DEFENDANTS' AGENTS AND CO-CONSPIRATORS

15.     The acts alleged in this Complaint to have been done by Yazaki North America were authorized, ordered and condoned by its parent companies and the acts alleged to have been done by the Yazaki Defendants were authorized, ordered and performed by their officers, directors, agents, employees or representatives while engaged in the management, direction, control or transaction of their business affairs.

16.     Various other persons, corporations, or firms not named as Defendants herein have participated in the violations alleged herein and may have performed acts and made statements in furtherance thereof.

17.     Each Defendant acted as the principal or agent of or for the other Defendant with respect to the acts, violations, and common course of conduct alleged by Plaintiff.

## INTERSTATE TRADE AND COMMERCE

18.     The activities of Defendants and their co-conspirators, as described in this Complaint, were within the flow of, and substantially affected, interstate commerce.

19.     During the Class Period, Defendants manufactured, sold and shipped substantial quantities of Instrument Panel Clusters in a continuous and uninterrupted flow of interstate and foreign commerce.

## THE WORLDWIDE AND U.S. ANTITRUST INVESTIGATIONS INTO PRICE FIXING IN THE MOTOR VEHICLE PARTS INDUSTRY

20.     A worldwide antitrust investigation aimed at suppliers of motor vehicle parts, including Instrument Panel Clusters, originated in Europe.

21.     According to the United States Department of Justice, the motor vehicle parts investigation is the "largest criminal investigation the [Department of Justice] has ever pursued," both in terms of scope and potential volume of commerce affected by the alleged illegal conduct. As the Department of Justice explained, the parts being investigated "are [all] essential to the wiring, circuit boards, gauges and fuel tanks of automobiles."

22.     Notably, in February 2010, during its ongoing investigation into anticompetitive conduct in the market for motor vehicle parts, the EC conducted raids at the European offices of certain co-conspirators.  In June 2010, the EC raids continued at the European offices of several motor vehicle parts suppliers, including Leoni AG, S-Y Systems Technologies GmbH, and Yazaki.

23.     With respect to the raids, a European Commission official stated, "[t]he Commission has reason to believe that the companies concerned may have violated European Union antitrust rules that prohibit cartels and restrictive business practices."

5

24.     Several companies have admitted that they are part of an antitrust investigation in the motor vehicle electrical and electronic component supplier market.

25.     For example, Delphi Automotive admitted that it "received a request for information from antitrust authorities at the European Commission seeking information about conduct by us in connection with an investigation in the European Union related to the electrical and electronic components market."

26.     Likewise, in conjunction with its investigation into collusion in the market for motor vehicle parts, Japan's Fair Trade Commission raided the Tokyo offices of motor vehicle parts manufacturers Furukawa Electric Co., Ltd., Sumitomo Electric Industries Ltd., and Yazaki in February 2010.

27.     With respect to the United States price fixing investigation, in February 2010, the same month that Japanese and European authorities conducted raids, FBI investigators executed warrants and searched the offices of three Japanese motor vehicle part makers in metropolitan Detroit.  Yazaki's subsidiary in Canton Township, Michigan was one of the companies searched.

28.     According to the United States Department of Justice, "[t]he antitrust division is investigating the possibility of anticompetitive cartel conduct of automotive electronic component suppliers" and is coordinating its investigation with European antitrust regulators.

29.      Commenting on her division's investigation, Shari A. Pozen, Acting Assisting Attorney General in charge of the Department of Justice's Antitrust Division, stated that "[a]s a result of this international price-fixing and bid-ridding conspiracy, automobile manufacturers paid noncompetitive and higher prices for parts in cars sold to U.S. consumers."   She further stated that "[t]his cartel harmed an important industry in our nation's economy, and the Antitrust

Division with the Federal Bureau of Investigation will continue to work together to ensure that these kinds of conspiracies are stopped."

30.     The Federal Bureau of Investigation's Special Agent in Charge, Andrew G. Arena stated "[w]hen companies partner to control and price fix bids or contracts, it undermines the foundation of the United States' economic system," and went on to note "[t]he FBI is committed to aggressively pursuing any company involved in antitrust crimes."

31.     As part of this investigation, several suppliers of motor vehicle parts have already agreed to plead guilty to price fixing in violation of Section 1 of the Sherman Act and to pay substantial criminal fines for their conduct.

## DEFENDANT'S PRICE FIXING CONSPIRACY

32.     Beginning as early as December 2002 and continuing until at least December 2010, Defendants and their co-conspirators established and operated a price fixing cartel to artificially raise prices for Instrument Panel Clusters

## INSTRUMENT PANEL CLUSTERS

33.     Instrument Panel Clusters are installed by motor vehicle original equipment manufacturers ("OEMs") in new motor vehicles as part of the motor vehicle manufacturing process.  They are also installed in motor vehicles to replace worn out, defective, or damaged Instrument Panel Clusters.

34.     OEMs include domestic OEMs such as the Big Three in Detroit (General Motors, Ford and Chrysler) and non-domestic OEMs who also operate manufacturing plants in the U.S. For example, during the Class Period: Nissan manufactured motor vehicles in Mississippi; Toyota in Kentucky; BMW in South Carolina; Honda, Hyundai and Mercedes-Benz in Alabama,

and; Kia in Georgia.  Suppliers such as Plaintiff purchased Instrument Panel Clusters directly from Defendants, which they then sold to OEMs or other suppliers to OEMs.

35.    When purchasing Instrument Panel Clusters, OEMs, suppliers to OEMs, and distributors issue Requests for Quotation ("RFQs") to motor vehicle parts suppliers.  In response, motor vehicle parts suppliers submit quotations or bids and the OEM or supplier to OEMs usually awards the business to the selected motor vehicle part supplier for four to six years.  Typically, the bidding process begins approximately three years prior to the start of production of a new model.  Japanese OEMs procure parts for U.S.-manufactured motor vehicles both in Japan and the United States.

36.    During the Class Period, Defendants sold Instrument Panel Clusters directly to OEMs, suppliers to OEMs and distributors.

37.    Defendants and their co-conspirators supplied Instrument Panel Clusters to OEMs for installation in motor vehicles manufactured and sold in the United States and elsewhere.  The Yazaki Defendants and their co-conspirators manufactured Instrument Panel Clusters (a) in the United States for installation in motor vehicles manufactured and sold in the United States, (b) in Japan for export to the United States and installation in motor vehicles manufactured and sold in the United States, and (c) in Japan for installation in motor vehicles manufactured in Japan for export to and sale in the United States.

38.    Plaintiff and members of the proposed Class purchased Instrument Panel Clusters directly from the Yazaki Defendants and their co-conspirators.

39.    During the Class period, Defendants, who in a competitive market would be horizontal competitors with other Instrument Panel Cluster manufacturers, engaged in a conspiracy to rig bids for and to raise, fix, maintain, or stabilize prices of Instrument Panel

Clusters.  As a result of their unlawful conduct, Defendants did not compete with other Instrument Panel Cluster manufacturers, but instead enjoyed business insulated from competition from the other manufacturers of such products.

## THE CHARACTERISTICS OF THE MARKET
## FOR INSTRUMENT PANEL CLUSTERS ARE CONDUCIVE TO COLLUSION

40.     Several important economic characteristics of the market for Instrument Panel Clusters plausibly increased its vulnerability to Defendants' price fixing conspiracy.

*High Barriers to Entry*

41.     A collusive arrangement that raises product prices above competitive levels would, under normal circumstances, attract new entrants seeking to benefit from the supracompetitive pricing.  Where, however, there are high barriers to entry, new entrants are less likely.

42.     There are high barriers to entry in the market for Instrument Panel Clusters.

43.     Entry requires a company to incur significant start-up capital expenditures.  A new entrant into the business would have to incur millions of dollars in costs, including capital expenditures on plants and equipment, as well as transportation, electricity, infrastructure for distribution, and labor.

44.     Another factor contributing to barriers to entry is the common use of contracts between providers and large volume purchasers of Instrument Panel Clusters.  A new entrant would face a significant hurdle to break into the market in the face of existing contracts with incumbent suppliers.

45.     The above-noted high barriers to entry help facilitate the cartel.

*Price Inelasticity*

46.     When a seller of goods or services can increase prices without suffering substantial reduction in sales, pricing is considered inelastic.  In order for a cartel to profit from raising prices above competitive levels, pricing must be relatively inelastic.  Otherwise, increased prices would result in declining use of services, revenues, and profits.

47.     Pricing for Instrument Panel Clusters is highly inelastic.  OEMs must use Instrument Panel Clusters.  There are no viable substitute products.

*Opportunities for Collusion*

48.     Defendants attended industry events, such as the Detroit Auto Show, fostering opportunities to conspire.  Such industry events have provided myriad opportunities to meet, conspire, and share information.

**UNITED STATES CRIMINAL CHARGES AND YAZAKI'S GUILTY PLEA**

49.     On January 30, 2012, the Department of Justice announced that Yazaki had agreed to pay a $470 million fine (the second largest criminal fine ever imposed for a United States antitrust violation) and to plead guilty to a three-count criminal information charging Yazaki with: (1) participating in a combination and conspiracy with its co-conspirators to suppress and eliminate competition in the motor vehicle parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, automotive wire harnesses and related products sold to certain motor vehicle manufacturers in the United States and elsewhere from at least as early as January 2000 and continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1; (2) participating in a combination and conspiracy with its co-conspirators to suppress and eliminate competition in the motor vehicle parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of Instrument Panel Clusters sold to certain motor vehicle manufacturers in the United States and elsewhere from at least as

early as December 2002 and continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1; and (3) participating in a combination and conspiracy with its co-conspirators to suppress and eliminate competition in the motor vehicle parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the price of fuel senders sold to a motor vehicle manufacturer in the United States and elsewhere from at least as early as March 2004 and continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1.

50.     According to the criminal Information filed against Yazaki, Yazaki and its co-conspirators carried out the conspiracies by:

a.      participating in meetings, conversations, and communications in the United States and Japan to discuss the bids and price quotations to be submitted to certain motor vehicle manufacturers in the United States and elsewhere;

b.      agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to certain motor vehicle manufacturers in the United States and elsewhere;

c.      agreeing, during those meetings, conversations, and communications, to allocate the supply of Instrument Panel Clusters sold to certain motor vehicle manufacturers in the United States and elsewhere on a model-by-model basis;

d.      agreeing, during those meetings, conversations, and communications, to coordinate price adjustments requested by certain motor vehicle manufacturers in the United States and elsewhere;

e.      submitting bids, price quotations, and price adjustments to certain motor vehicle manufacturers in the United States and elsewhere in accordance with the agreements reached;

     f.      selling Instrument Panel Clusters to certain motor vehicle manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

     g.      accepting payment for Instrument Panel Clusters sold to certain motor vehicle manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

     h.      engaging in meetings, conversations, and communications in the United States and elsewhere for the purpose of monitoring and enforcing adherence to the agreed-upon bid-rigging and price-fixing scheme; and

     i.      employing measures to keep their conduct secret, including but not limited to using code names and meeting at private residences or remote locations.

### ADDITIONAL GUILTY PLEAS IN THE MOTOR VEHICLE PARTS INDUSTRY

51.     In addition to Yazaki, a number of other companies and individuals have entered into plea agreements relating to their participation in conspiracies to fix prices and rig bids in the motor vehicle parts industry.

52.     Four executives from Yazaki—Tsuneaki Hanamura, Ryoji Kuwai, Shigeru Ogawa, and Hisamitsu Takada—have pleaded guilty to their participation in a conspiracy to suppress and eliminate competition in the motor vehicle parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of automotive wire harnesses in violation of Section 1 of the Sherman Act.  All four executives of Yazaki will serve prison terms, which range from 15 months to two years.  Notably, the two-year sentences would be the longest prison term imposed on a foreign national who voluntarily submitted to U.S. jurisdiction for a Sherman Act antitrust violation.

53.     The Department of Justice also has announced that Denso Corporation ("Denso") has agreed to pay a total of $78 million in criminal fines and to plead guilty to a two-count criminal information charging Denso with: (1) participating in a combination and conspiracy with its co-conspirators to suppress and eliminate competition in the motor vehicle parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of electronic control units ("ECUs") sold to a motor vehicle manufacturer in the United States and elsewhere from at least as early as January 2000 and continuing until at least February 2010 in violation of §1 of the Sherman Act; and (2) participating in a combination and conspiracy with its co-conspirators to suppress and eliminate competition in the motor vehicle parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of heater control panels ("HCPs") sold to a motor vehicle manufacturer in the United States and elsewhere from at least as early as January 2000 and continuing until at least February 2010 in violation of the §1 of the Sherman Act.

54.     On September 30, 2011, Furukawa announced that it had "concluded a plea agreement with the United States Department of Justice under which the company acknowledges the allegations in the criminal proceeding relating to cartel activities with certain competitors for the automotive wire harness and related products and pays a fine of 200,000,000 US dollars."

55.     According to Furukawa, "[a]fter analyzing the applicable laws and facts as a whole, Furukawa Electric has decided to enter into a plea agreement with the United States Department of Justice."

56.     Furukawa executives Hirotsugu Nagata, Junichi Funo and Tetsuya Ukai also pled guilty and agreed to serve prison sentences in the United States ranging between 1 year to 18 months.  Two of the executives have already been sentenced to 15 and 18 month sentences in the

United States, while the third executive, who agreed to serve a year and a day in prison in the United States, is scheduled to be sentenced on February 28, 2012.

## CLASS ACTION ALLEGATIONS

57.     Plaintiff brings this action on behalf of itself and pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) as the representative of a Class defined as follows:

> All direct purchasers of motor vehicle Instrument Panel Clusters in the United States from any of the Defendants (or their controlled subsidiaries, affiliates, or joint-ventures) between December 2002 and December 2010 ("the Class").

58.     Members of the Class are so numerous and geographically dispersed across the United States that joinder is impracticable.  While the exact number of Class members is unknown to Plaintiff, it is believed to be in the hundreds.  The identity of the members of the Class can be readily determined from information and records in the possession of Defendants.

59.     Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class were damaged by the same wrongful conduct, *i.e.*, they have paid artificially inflated prices for Instrument Panel Clusters as a result of Defendants' anticompetitive and unlawful conduct.

60.     Plaintiff will fairly and adequately protect and represent the interests of the Class.  Plaintiff's interests are coincident with, and not antagonistic to, those of the Class.

61.     Plaintiff is represented by counsel experienced and competent in the prosecution of antitrust class action litigation.

62.     Questions of law and fact common to members of the Class predominate over questions, if any, that may affect only individual Class members because Defendants have acted on grounds generally applicable to the entire Class.  Such generally applicable conduct is inherent in Defendants' anticompetitive and unlawful conduct.

63.     Questions of law and fact common to the Class include, but are not limited to:

a.      Whether Defendants contracted, combined, or conspired to fix, raise, maintain, or stabilize prices, or to rig bids for, Instrument Panel Clusters;

b.      The existence and duration of the contract, combination, or conspiracy alleged herein;

c.      Whether the contract, combination, or conspiracy caused Instrument Panel Cluster prices to be higher than they would have been in the absence of Defendants' conduct;

d.      Whether Defendants' conduct caused injury to the business or property of Plaintiff and members of the Class;

e.      Whether Defendants' conduct violates Section 1 of the Sherman Act; and

f.      The appropriate measure of the amount of damages suffered by the Class.

64.     A class is superior to the other methods available for the fair and efficient adjudication of this litigation since individual joinder of all Class members is impracticable.  The damages suffered by the individual Class members are relatively small, given the expense and burden of individual prosecution of the claims asserted in this litigation.  Thus, absent the availability of class action procedures, it would not be feasible for Class members to redress the wrongs done to them.  Further, individual litigation presents the potential for inconsistent judgments and would greatly magnify the delay and expense to all parties and the court system.  Therefore, the class action device presents far fewer case management difficulties and will provide the benefits of unitary adjudication, economy of scale, and comprehensive supervision in a single court.

**ANTITRUST INJURY SUFFERED BY PLAINTIFF AND THE CLASS**

65.     Defendants' anti-competitive conduct has had the following effects:

a.   price competition has been restrained, suppressed, or eliminated with respect to Instrument Panel Clusters;

b.   the prices of Instrument Panel Clusters have been raised, fixed, maintained, or stabilized at supra-competitive levels; and

c.   purchasers of Instrument Panel Clusters have been deprived of free and open competition in the Instrument Panel Cluster market.

66.     As a result of the contract, combination, or conspiracy, Plaintiff and Class members paid anticompetitive prices for Instrument Panel Clusters, and Plaintiff and Class members have sustained injury to their business or property.

**FRAUDULENT CONCEALMENT**

67.     Defendants affirmatively and wrongfully concealed their anti-competitive conduct from Plaintiff and the Class, from at least December 2002 through at least December 2010. During that time, Plaintiff and the Class did not learn or discover the operative facts giving rise to the instant Complaint, despite Plaintiff's due diligence.   Thus, Defendants' fraudulent concealment tolled the statute of limitations through at least December 2010.

68.     Defendants represented publicly, both to customers and otherwise, that their pricing and bidding activities were unilateral, rather than based on anticompetitive agreements. In making those false representations, Defendants misled Plaintiff and members of the Class as to the true, collusive, and coordinated nature of their bid rigging, customer allocation, and price-fixing activities.

69.     Defendants' wrongful conduct was carried out in part through means and methods that were designed to avoid detection, and which, in fact, successfully precluded detection.

70.    In particular, Defendants participated in meetings, conversations, and communications to discuss the bids and price quotations to be submitted to customers in the United States and elsewhere.

71.    During these meetings, conversations, and communications, Defendants agreed upon bids and price quotations to be submitted to customers in the United States and elsewhere.

72.    Defendants likewise agreed to allocate the supply of Instrument Panel Clusters sold to customers in the United States and elsewhere on a model-by-model basis.

73.    Defendants also agreed to coordinate price adjustments requested by customers in the United States and elsewhere.

74.    In accordance with the agreements reached by Defendants, they submitted collusive bids, price quotations, and price adjustments to customers in the United States and elsewhere.

75.    As a result of such coordinated actions, and unbeknownst to Plaintiff, Defendants sold Instrument Panel Clusters to purchasers in the United States and elsewhere at collusive and noncompetitive prices.

76.    To keep the sale of Instrument Panel Clusters at collusive and noncompetitive prices a secret, Defendants employed certain measures, including but not limited to, using code names and meeting at private residences or remote locations.

77.    Moreover, Defendants' successful contract, combination, or conspiracy was by its nature inherently self-concealing.

78.    In the course of purchasing Instrument Panel Clusters, Plaintiff researched and compared prices of the specific products offered by Defendants.  Plaintiff also read and reviewed all pricing documents it received from Defendants.

79.     Among the pricing information Plaintiff received from Defendants were frequent price increase announcements, including announcements that represented that the bases of price increases in Instrument Panel Clusters were due to (1) increased labor costs, and (2) increased expenses.  Plaintiff used due diligence in reviewing and ultimately relying on those representations.  Plaintiff had no way to know that the real reason for Defendants' price increases was criminal price fixing of Instrument Panel Clusters.

80.     Plaintiff looked for lower priced alternative Instrument Panel Clusters that it could present to an OEM with a request for modification of the specified component and vendor. In Plaintiff's experience, however, lower price non-specified Instrument Panel Clusters were not available.

81.     In the exercise of due diligence, Plaintiff, through its purchasing department, researched alternate sources of Instrument Panel Clusters on the Internet both domestically and internationally.

82.     Plaintiff exercised due diligence in researching and comparing prices of Instrument Panel Clusters to ascertain whether it was being offered competitive prices for such products.

83.     Plaintiff also kept abreast of pricing and developments in the Instrument Panel Clusters industry by reviewing trade publications and attending industry trade shows.

84.     Plaintiff did not and could not have discovered Defendants' unlawful contract, combination, or conspiracy at any earlier date, despite its due diligence.  Defendants undertook affirmative acts of concealment of their contract, combination, or conspiracy, including their attendance at secret meetings, making misrepresentations to Plaintiff and to the Class of the

reasons for price increases, and engaging in secret conversations concerning the allocation of customers, bid rigging, and price-fixing of Instrument Panel Clusters.

85.     Despite its due diligence, Plaintiff had no knowledge of Defendants' unlawful contract, combination, or conspiracy.

## COUNT I: CLAIM FOR VIOLATION OF SHERMAN ACT § 1

86.     Plaintiff incorporates by reference the allegations set forth above and adopts same as though fully set forth herein.

87.     Defendants and unnamed co-conspirators entered into and engaged in a contract, combination, or conspiracy in an unreasonable restraint of trade in violation of Section 1 of the Sherman Act.

88.     The acts done by each of the Defendants as part of, and in furtherance of, the contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

89.     Commencing at least as early as December 2002 and continuing until at least until December 2010, the exact dates being presently unknown to Plaintiff, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially fix, raise, stabilize, and control prices for Instrument Panel Clusters, thereby creating anticompetitive effects.

90.     Defendants and their co-conspirators' anti-competitive acts were intentionally directed at the United States market and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices for Instrument Panel Clusters throughout the United States.

91.     As a result of the contract, combination, or conspiracy alleged herein, the prices charged to Plaintiff and members of the Class for Instrument Panel Clusters were unlawfully raised, fixed, maintained, or stabilized in the United States.

92.     The contract, combination, or conspiracy has had the following effects:

a.   Prices paid by Plaintiff and members of the Class for Instrument Panel Clusters were raised, fixed, maintained, or stabilized at non-competitive levels;

b.   Plaintiff and members of the Class have been deprived of the benefits of free, open, and unrestricted competition in the market for Instrument Panel Clusters; and

c.   Competition in the market for Instrument Panel Clusters has been unlawfully restrained, suppressed, or eliminated.

93.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been damaged and will continue to be damaged by paying supra-competitive prices that they would not have had to pay in the absence of the unlawful conduct of Defendants as alleged herein.

94.     The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

95.     Plaintiff and members of the Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that:

A.     The Court determine that this action may be maintained as a class action under Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to the Class;

B.      The unlawful contract, combination, or conspiracy alleged herein be adjudicated and decreed to have been a per se violation of Section 1 of the Sherman Act;

C.      Judgment be entered for Plaintiff and the Class against Defendants for three times the amount of damages sustained by Plaintiff and the Class as allowed by law, together with the costs of this action, including reasonable attorneys' fees;

D.      Defendants be enjoined from continuing the unlawful contract, combination, or conspiracy alleged herein; and

E.      Plaintiff and the Class be granted such other, further, and different relief as the case may require or as the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues so triable.

Dated: February 8, 2012                             /s/ David H. Fink_____
                                                    David H. Fink (P28235)
                                                    Darryl Bressack (P67820)
                                                    FINK + ASSOCIATES LAW
                                                    100 West Long Lake Road; Ste. 111
                                                    Bloomfield Hills, MI 48304
                                                    Telephone:  248-971-2500
                                                    dfink@finkandassociateslaw.com
                                                    dbressack@finkandassociateslaw.com

                                                    Gregory P. Hansel
                                                    Randall B. Weill
                                                    Joshua R. Carver
                                                    Megan A. Sanders
                                                    PRETI, FLAHERTY, BELIVEAU &
                                                    PACHIOS LLP
                                                    One City Center
                                                    P.O. Box 9546
                                                    Portland, ME 04112-9546
                                                    Telephone:  (207) 791-3000
                                                    ghansel@preti.com
                                                    rweill@preti.com
                                                    jcarver@preti.com

msanders@preti.com

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone:  (215) 238-1700
jkohn@kohnswift.com
whoese@kohnswift.com
dabrahams@kohnswift.com

Michael J. Freed
Steven A. Kanner
Douglas A. Millen
Michael L. Silverman
FREED KANNER LONDON &
MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
mfreed@fklmlaw.com
skanner@fklmlaw.com
dmiller@fklmlaw.com
msilverman@fklmlaw.com

Eugene A. Spector
William G. Caldes
Jeffrey L. Spector
SPECTOR ROSEMAN KODROFF &
WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
espector@srkw-law.com
bcaldes@srkw-law.com
jspector@srkw-law.com

Joseph M. Fisher (P13542)
Karen H. Safran (P51317)
CARSON FISCHER, P.L.C.
411 Andover Road West – Second Floor
Bloomfield Hills, MI 48302-1924
(248) 644-4840
jfisher@carsonfisher.com
ksafran@carsonfisher.com

Robert Peurach (P34446)
DAKMAK PEURACH, P.C.
615 Griswold Street, Suite 600
Detroit, MI 48226
(866) 732-9522
rpeurach@gdakmak.com

*Counsel for Plaintiff ACAP, L.L.C. f/k/a
Aguirre, Collins & Aikman Plastics, LLC
and the Proposed Class*